**The document below is hereby signed.**

**Dated: May 16, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
             UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
STEPHEN SUESS,                 )    Case No. 11-00625
                               )    (Chapter 13)
          Debtor.              )    Not for Publication in
                               )    West's Bankruptcy Reporter.
```

MEMORANDUM DECISION AND ORDER RE
<u>OBJECTION TO AMENDED CLAIM OF DONNA M. SUESS</u>

Donna M. Suess, the former wife of the debtor, Stephen Suess, has filed an amended proof of claim which asserts priority for a $23,246.78 claim based on the claim allegedly being for a domestic support obligation.  The trustee objects that the claim is not for a domestic support obligation, and thus is not entitled to priority status.  The court issued an order expressing its preliminary views on the issues, and directing the trustee and the debtor to file memoranda addressing what additional evidence, beyond the evidence appended to the amended proof of claim, they would present as to the objection to show cause why the court ought to rule differently than set forth in its preliminary views.  The trustee filed a memorandum, and the debtor has filed a memorandum in response.  The court will

sustain the objection in part in the same manner as set forth in the court's preliminary views.  This constitutes the court's findings of fact and conclusions of law.

I

A domestic support obligation includes a debt owed to a former spouse that is "in the nature of alimony, maintenance, or support ... [of that former spouse] **without regard to whether such debt is expressly so designated**." 11 U.S.C. § 101(14A) (emphasis added).  Even if divorced spouses expressly waive alimony, a claim under a divorce or separation agreement can still be in the nature of maintenance or support and thus qualify as a domestic support obligation.  *See*, *e.g.*, *Benson v. Benson (In re Benson)*, 2011 WL 4435560 (11th Cir. Sept. 26, 2011).

The Judgment of Absolute Divorce, attached to the original proof of claim and made part of the amended proof of claim, awarded $23,246.78 to Ms. Suess, the amount she asserts as a claim in this case.  The Judgment of Absolute Divorce denied the parties alimony by reason of their express waivers thereof pursuant to the terms of a Settlement Agreement incorporated by

the Judgment of Absolute Divorce.[1]  The Settlement Agreement, however, provided:

> Husband currently pays the COBRA health insurance premiums to his former employer, Becton Dickinson Biosciences **for the benefit of Wife**. Husband shall continue to pay said COBRA payments and/or its equivalent health, dental, vision, etc. insurance coverage for a total of three (3) years from the date Husband began paying said COBRA payments.

[Emphasis added.]  At the hearing at which the Settlement Agreement was announced, it was disclosed that Ms. Suess had extensive medical problems and resulting extensive medical costs, including treatment by a psychiatrist (Dr. Foranz), by a LCSW, and by a cardiologist, and it was disclosed that Ms. Suess had had cancer and had suffered removal of three-quarters of a lung, and that she has a severe case of asthma.

Providing medical insurance coverage was plainly a form of support even if not labeled as such.  Moreover, the Settlement

---

[1]  The Settlement Agreement consisted of a transcript of a hearing at which the agreement was announced on the record and a later written agreement.  The written agreement recited:

> It is the mutual desire of the parties that hereafter they shall each maintain and support themselves separately and independently of the other. Accordingly, and in consideration of this Agreement, Wife releases and discharges Husband, absolutely and forever, for the rest of her life from any and all claim or right to receive from Husband temporary, rehabilitative, definite, or indefinite alimony, support, or maintenance for the past, present or future. Wife understands and recognizes that, by the execution of this Agreement, she cannot at any time in the future make any claim against Husband for alimony, support, or maintenance.

Agreement recited that "Wife accepts the benefits of this Agreement as consideration for her waiver of her right to seek a determination by a court of her rights to alimony, marital property, and monetary award."  Ms. Suess's financial situation was also discussed at the hearing at which the Settlement Agreement was put on the record:

> MR. LAWLOR: Now, you have had some jobs, some difficulty holding down jobs recently but I think that could largely be due to your physical and mental health and some problems going through this divorce, is that also correct?
> MRS. SUESS: Yes.
> MR. LAWLOR: And you are presently being treated by Dr. Foranz and Dr. Foranz and others have indicated to you that they strongly encourage you to file for social security disability as a result of your multiple physical and mental difficulties, have they, have they not?
> MRS. SUESS: Yes.

This likely explains why the Settlement Agreement required Mr. Suess to continue providing medical insurance coverage for three years.

The Settlement Agreement also required Mr. Suess to maintain an insurance policy on his life with Ms. Suess as the beneficiary "in consideration of her waiver of alimony in this divorce proceeding."

The $23,246.78 awarded by the Judgment of Absolute Divorce consists of:

- $11,682.91 in Ms. Suess's medical costs that Mr. Suess had been obligated to cover;

- $4,738.00 representing Ms. Suess's remaining share under the Settlement Agreement of Mr. Suess's 401(k)

    plan, titled in Mr. Suess's name but identified as marital property; and

- $6,825.87 in attorney's fees incurred by Ms. Suess in enforcing Mr. Suess's obligations under the Settlement Agreement.

Specifically, the Judgment of Absolute Divorce decreed that it is:

> ORDERED, that Defendant Stephen R. Suess is found to have breached the aforementioned Settlement Agreement between the Parties; and shall pay damages unto Plaintiff as follows:
> A. Defendant shall pay the amount of $4,738.00 to Plaintiff which represents her remaining share of his 401(k) plan titled in Defendant's name (Becton Dickinson & Company Savings Incentive Plan), but identified as marital property, said amount owed to Plaintiff pursuant to their Settlement Agreement; and it is further
> B. Defendant shall indemnify and hold Plaintiff harmless as to all matters concerning the Internal Revenue Service regarding any penalties and interest associated early with the withdrawal of funds from the aforementioned 401(k) including Plaintiff's reasonable attorney's fees; and further
> C. Defendant shall pay unto Plaintiff $7,064.00, which represents the deductibles paid by Plaintiff for calendar years 2009 and 2010, on account of Defendant obtaining a health insurance policy which was not reasonably equivalent to the health insurance policy Defendant previously provided to Plaintiff as agreed in their Settlement Agreement; and further
> D. Defendant shall pay onto [sic] Plaintiff $1,279.91 for the difference in her co-pays regarding her prescriptions that Plaintiff incurred while under the new health insurance plan; and further
> E. Defendant shall pay unto Plaintiff $153.00 which represents the difference regarding her eye exams and her contact lenses between the vision policies Defendant previously provided and the vision policy currently provided by Defendant; and further
> F. Defendant shall pay unto Plaintiff $945.00 for which represents Plaintiff's expenses for uncovered mental health visits from April, 2009 until December, 2010 which were not covered under the new health insurance policy; and further

5

> G. Defendant shall pay unto Plaintiff $1,955.00 for her oxygen treatments from April, 2009 until December, 2010; and further
> H. Defendant shall pay unto Plaintiff $286.00 which represents doctor's expenses which were not covered by the current health insurance policy but were covered under the previous policy; and further
> ORDERED, that Defendant shall provide Plaintiff, within 30 days of the entry of this Order, proof that the $200,000.00 life insurance policy is in effect, that Plaintiff is the beneficiary of the policy and that the premiums have been paid; and it is further
> ORDERED, that Defendant shall obtain a second life insurance policy for $50,000.00, within 90 days of the date of this Order, shall provide Plaintiff, proof that the $50,000.00 life insurance policy is in effect, that Plaintiff is the beneficiary of the policy and that the premiums have been paid; and it is further
> ORDERED, that Defendant shall pay unto Plaintiff $6,825.87 in attorney's fees for the enforcement of the breach of contract action[.]

The $11,682.91 in Ms. Suess's medical costs that Mr. Suess had been obligated to cover were in the nature of a support obligation. That $11,682.91 and the portion of the $6,825.87 in attorney's fees allocable to recovery of the $11,682.91, constitute a domestic support obligation entitled to priority status. Of the $6,825.87 in attorney's fees, 71.15% (the medical costs awards' pro rata share) or $4,856.61, is allocable to the

enforcement of the domestic support obligation of $11,682.91,[2] and is itself entitled to treatment as a domestic support obligation.

II

The trustee's memorandum points to the debtor's schedules and Ms. Suess's original proof of claim (which did not assert priority status for the claim).  Otherwise, she has pointed to no evidence she would present beyond that submitted with the proofs of claim, and has not adduced arguments convincing me that $16,539.52 ought not be treated as a debt for maintenance or support entitled to be treated as a domestic support obligation, consisting of:

- the $11,682.91 in medical costs awarded to Ms. Suess; and

- 71.15% (the medical costs awards' pro rata share) of the $6,825.87 in attorney's fees awarded for enforcing

---

[2] The medical costs are 71.15% of the $16,420.91 in amounts awarded other than attorney's fees.  Neither party has pointed to, or sought time to obtain, attorney billing records to show that more time (or less time) was devoted to enforcing the medical expense obligations than 71.15% of the total attorney time.  Nor has either party questioned the court's methodology, which was set forth in the court's preliminary views, for allocating the attorney's fees.  The numerous items of medical expense obligations addressed by the Judgment of Absolute Divorce suggests that litigating those items may have required substantial attorney time, and that the methodology may have erred in favor of the trustee, but without attorney's time records, it is fair to allocate based on the dollar amount of the obligations.

the Settlement Agreement, which equals $4,856.61. The failure of the debtor to schedule the claim as a priority claim, and the failure of Ms. Suess to claim priority status at the outset (only doing so in an amended proof of claim) are not enough to persuade me that the amounts enumerated above ought not be accorded priority status.

Ms. Suess similarly has not pointed to any additional evidence beyond that filed with the proofs of claim, or adduced arguments convincing me that I ought not treat the award of $4,738.00 representing Ms. Suess's remaining share under the Settlement Agreement of Mr. Suess's 401(k) plan, titled in Mr. Suess's name but identified as marital property, as a property settlement not in the nature of maintenance and support. The 401(k) account was to be distributed one-half to Ms. Suess and one-half to Mr. Suess. This suggests that the focus was on an equitable distribution of the 401(k) account as marital property, not on assuring that Ms. Suess had another source of financial support. *See In re Mobley,* 2009 WL 3754251 (Bankr. M.D.N.C. Nov. 4, 2009) (the division of property was not a domestic support obligation because the intent was to obtain an equal division of marital assets, and the focus was not on the financial needs of the spouses). Accordingly, that $4,738.00 portion of the claim, and the $1,969.26 in attorney's fees allocable to enforcement of the Settlement Agreement with respect to that $4,738.00, for a

total of $6,707.26, ought to be treated as an unsecured claim not entitled to priority.

III

In accordance with the foregoing, it is

ORDERED that:

- $16,539.52 of Ms. Suess's amended proof of claim is allowed as a claim entitled to priority as a domestic support obligation; and

- $6,707.26 of Ms. Suess's amended proof of claim is disallowed as a priority claim and is allowed as an unsecured claim not entitled to priority.

[Signed and dated above.]

Copies to: Recipients of e-notification.

9